CHARLES F. KENDALL

v.

CHARLES F. YOUNG.

*Sales—Personal Property—Conditions—Breach—Damages—Evidence.*

1. When under a contract of sale of goods, the vendee improperly refuses to complete the taking of the invoice provided for therein, the vendor may give the latter notice that he will go on and complete the same, and having done so, thereby ascertaining the amount due, it being provided that such amount shall be so ascertained, may treat the goods as his own property, and recover from the vendee the damage suffered through the failure of the latter to carry the sale through, which should be the difference between the

contract price and the market value of the goods at the time and place for delivery provided in the agreement.

2. In such case, having ascertained the price, the vendor may properly notify the vendee that he will sell the goods for his account and hold him for any difference between the contract price and the sum obtained by a resale of the goods.

3. The vendor so reselling, takes the position of agent for the vendee, and is held to the same degree of care, judgment and fidelity, that is imposed by law upon an agent put in the custody of such goods in such condition, with instructions to sell them to the best advantage.

4. If the net amount obtained by the vendor on such resale of the goods is less than the contract price so ascertained, he can recover such difference in an appropriate action.

5. Where, in such case, the vendee pays the vendor a given sum, before the taking of stock, such payment not being required by the contract, the vendee failing to complete the sale, the vendor may in an action brought for its recovery by the vendee, recoup whatever damages he has sustained by reason of such breach.

6. In such action by the vendee, the judgment should be for him for the full amount of such payment, where no evidence is introduced on the part of the vendor, as to what damages, if any, were sustained by reason of such breach.

[Opinion filed April 8, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

Mr. E. A. OTIS, for appellant.

Messrs. ABBOTT & BAKER, for appellee.

WATERMAN, J. Appellant and appellee made a contract containing the following provisions:

"TOPEKA, KAS., Nov. 15, 1884.

" The following agreement is this day made between C. F. Kendall, of Topeka, Kansas, party of the first part, and Chas. F. Young, of Paw Paw, Mich., party of the second part. The party of the first part hereby agrees to sell to the party of the second part, all of his merchandise and fixtures now in store No. 204 Kansas Ave., Topeka, excepting counters, shelving and upright show-case (these to be included in rent of store), all of said goods and fixtures to be invoiced at cost and as

agreed upon (see estimate on show-cases, stoves, safe, store and mirrors, viz., $747), for which party of the second part agrees to pay as follows : Lands in Oceana and Van Buren Cos., Mich. (see description below), eighty-seven hundred dollars ($8,700). The balance in cash." * * *

Appellee gave to appellant a draft for $1,000, which was afterward paid. A few days after the signing of the contract the parties proceeded with the taking of an inventory of the stock of goods, until a dispute arose concerning the production by appellant of a certain invoice, and upon the refusal by appellant to produce this, appellee left the store, saying that he was done. This court has in this case, reported in the 27 Ill. App. 174, held that such refusal by appellant did not justify appellee in refusing to go on and fulfil his agreement, and to such decision we adhere.

It now appears that appellee, after so refusing to go on and perform the contract, returned to his home in Michigan.

Before he left Topeka, appellant gave to him the following notice :

"Topeka, Kas.

" C. F. Young :

" You are hereby notified that I will employ competent help and proceed at once to complete the invoice of merchandise and fixtures now in store 204 Kansas avenue, Topeka, Kansas, in accordance with our contract made November 15, 1884.

" C. F. Kendall."

The next thing appellant heard from appellee, was when he received the following written upon a postal card :

"Chicago, Ill., Nov. 19, 1884.

"*Dear Sir:*—Just arrived and had a very nice trip. Weather fine. As soon as convenient please mail me the N. Y. Dft. to Paw Paw and oblige,

" Yours truly,

" C. F. Young."

Appellant did not comply with this request, but proceeded to collect the draft, and afterward sold about seven-eighths of the stock to a Mr. Collins.

Appellee, after the sale to Collins had been made, wrote to appellant the following letter :

"R. R. DEPOT, HARTFORD, MICH., Dec. 13, 1884.
"C. F. KENDALL, Esq., Topeka, Kas.

"*Dear Sir:*—I have abstracts now ready and everything in order. Be kind enough to advise me at what date we shall complete our business and oblige,

"Very truly yours,
"C. F. YOUNG.

"Please write me care Clifton House, Chicago."

Proceeding upon the theory of appellant that appellee was not justified in refusing, as he did, to go on and complete his purchase, in this suit, which is brought to recover the $1,000 received and retained by appellant, the question for consideration is, what are the rights of a vendor who has received a portion of the purchase money when the vendee improperly refuses to complete a contract of purchase he has made. In this case, the agreement of the parties does not determine the amount to be paid by the vendee for the stock of goods, but it provides a means by which such amount can be ascertained, viz., by invoicing the same at cost. There is not only no provision for the forfeiture of any amount advanced by the vendee, but no requirement that he shall advance anything. The prepayment of the $1,000 was as to the prepayment a voluntary act upon his part, not required by the contract.

Under this executory contract, appellee having improperly refused to go on and complete the taking of the invoice, appellant might, as he did, have given notice that he would go on and complete the invoice, and thus having ascertained the amount to be paid by appellee, he might have treated the goods as still his own property, and have recovered from appellee the damages he had suffered, which would be the difference between the contract price and the market value of the goods at the time and place for delivery provided in the agreement. Tiedeman on Sales, Sec. 333; Capen v. De Steiger Glass Co. 105 Ill. 185; Danforth v. Walker, 37 Vt. 239. Or, having ascertained the price as aforesaid, appellant might have notified appellee that he would sell the goods for his account and hold him for any difference between the contract price and the sum obtained by a resale of the goods.

Saladin v. Mitchell, 45 Ill. 79–85; Bagley v. Findlay, 82 Ill. 524; Tiedeman on Sales, Sec. 334; Ullmann v. Kent, 60 Ill. 271; Kadish v. Young, 108 Ill. 170; Tribune Co. v. Bradshaw, 20 Ill. App. 17. While in some cases it is not necessary that notice of an intention to resell should be given. Ullmann v. Kent, *supra.*

If the vendor does resell, he takes the position of agent for the vendee, and is held to the same degree of care, judgment and fidelity that is imposed by the law upon an agent put in the custody of such goods in such condition, with instructions to sell them to the best advantage. Bagley v. Findlay, *supra;* Tiedeman on Sales, Sec. 334; Dunstan v. McAndrew, 44 N. Y. 472; Burge v. Cedar Rapids & Mo. R. R. Co., 32 Iowa, 101.

If the net amount obtained by appellant in such resale of the goods had been less than the contract price, ascertained as aforesaid, appellant could have recovered from appellee such difference in an appropriate action. Bagley v. Findlay, *supra;* Phelps v. Hubbard, 51 Vt. 489; Hunter v. Wetsell, 34 N. Y. 549; Lewis v. Greider, 51 N. Y. 231.

In the present instance appellant's measure of damages would have been as above, less the amount he had received upon the draft. Hunter v. Wetsell, *supra.*

Being sued for the money obtained upon the draft, appellant, under the plea of the general issue, was entitled to recoup whatever damages he had sustained by the breach by appellee of the contract.

He did sell a portion of the goods without notice, but he offered no evidence tending to show what the contract price, ascertained as aforesaid, was; he simply offered to show what he did obtain for a portion of the goods.

The jury ought, therefore, to have found, as they did, for the full amount of the draft, there being no evidence as to what damages, if any, appellant did sustain. For aught that appears in this record, he was a gainer instead of a loser by the breach of contract by the vendee.

The verdict of the jury is in effect that there was no breach of contract by appellee. We do not wish to be understood

by this opinion as expressing ourselves upon the question whether, under the facts shown upon the last trial, there was or was not a breach of the contract by the vendee; we have merely discussed the questions involved from the standpoint and theory of appellant that appellee was not justified in refusing to go on with the taking of the invoice; nor do we wish to be understood as expressing the opinion that the two lines of conduct mentioned were all that appellant might properly have pursued.

The judgment of the court below is affirmed.

*Judgment affirmed.*