### THE PENN PLATE GLASS COMPANY
### *v.*
### THE JAMES H. RICE COMPANY.

*Opinion filed June 23, 1905—Rehearing denied October 24, 1905.*

1. APPEALS AND ERRORS—*amount of damages recoverable is a question of fact.* The amount of damages recoverable in an action for breach of contract is a question of fact, upon which the finding of the Appellate Court is final unless it has adopted a wrong measure of damages in reaching its finding.

2. SAME—*right of Supreme Court to examine opinions of Appellate Court.* If the Appellate Court, upon second appeal, refuses to follow the rules of law laid down in its first opinion, the Supreme Court may examine the opinions of the Appellate Court in the case, in connection with the record, to ascertain whether the case presented on second appeal is the same on the facts as the case presented on first appeal.

3. SAME—*when the Appellate Court is not bound to follow its first opinion.* If, after reversal and remandment, further material evidence is introduced on the second trial, the trial and Appellate Courts are not bound to follow the rules laid down in the opinion filed on first appeal, but should apply such principles of law as are applicable to the new case made on the second trial.

4. SAME—*when cross-error should be assigned.* If the plaintiff in assumpsit desires to question the trial court's refusal to allow in-

terest on the amount recovered he should assign cross-error when the defendant appeals, otherwise he cannot complain of the ruling on further appeal by him from the judgment of Appellate Court.

5. DAMAGES—*correct measure in action for breach of contract.* In an action against a vendee who received and paid for part of the goods contracted for but refused to receive the remainder, requesting the vendor to sell them at the best price obtainable, a correct measure of damages is the difference between the price so obtained on re-sale and the contract price.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. P. VAIL, Judge, presiding.

This was an action of assumpsit, commenced by plaintiff, against the defendant, in the circuit court of Cook county. The case was tried before a jury, and resulted in a verdict and judgment against the defendant for the sum of $15,000. An appeal was prosecuted to the Appellate Court for the First District, where the judgment was reversed and the cause was remanded for a new trial. (88 Ill. App. 407.) On the case being re-instated in the circuit court a jury was waived and a trial was had before the court, which resulted in a finding and judgment in favor of the plaintiff for $16,595.20. The defendant prosecuted a second appeal to the Appellate Court for the First District, where the judgment of the circuit court was again reversed, and judgment was rendered in the Appellate Court in favor of the plaintiff for the sum of $9121.30, (117 Ill. App. 356,) and the plaintiff has prosecuted an appeal to this court.

It appears from the evidence that on the 26th day of June, 1896, the plaintiff sold to the defendant, at an agreed price per square foot, 120,000 square feet of polished plate glass, stock sheets, which it was to deliver to the defendant in lots of 10,000 feet per month, beginning November 1, 1896, at its factory at Irwin, Pennsylvania. Plaintiff delivered, prior to February 25, 1897, to defendant 35,345 square

feet of glass, and the defendant paid the plaintiff therefor the sum of $18,072.15. On that date the defendant wrote the plaintiff that it was unable to accept or pay for any further shipments of glass, and notified the plaintiff not to manufacture for it or ship to it any more glass after that date. On March 1 the plaintiff, replying thereto, said it had a contract with the defendant under which it had been shipping it glass and upon which contract there was still due it about 85,000 feet of glass; that it was ready to perform on its part, and unless there was some arrangement to the contrary it should expect to continue shipments. On March 3 the defendant replied it meant what it said in its letter of February 25, and again notified the plaintiff not to manufacture for it or ship to it any more glass. On the 11th of March the plaintiff replied it understood the defendant had repudiated the contract of June 26, and it should hold defendant responsible for all loss or damage incurred in consequence of its action. On April 10, 1897, the plaintiff commenced suit. Upon the trial the defendant did not deny that there had been a breach of the contract or that it was liable for damages by reason of such breach, the only controversy between the parties being as to the amount for which defendant should be held liable to the plaintiff by reason of its failure to receive and pay for said glass.

The Appellate Court incorporated in its judgment the following findings of fact: "The court finds that there was no market price, at the time of the breach, for the undelivered glass contracted for, and no evidence of sales or other evidence reasonably tending to prove market value at the time of the breach, and that the damages assessed by the trial court, and for which judgment was rendered, are $7473.90 in excess of the damages warranted by the evidence; also, that the appellant requested appellee to sell, and appellee sold, the undelivered glass for the best obtainable prices. And the court doth further find that the said appellee, the

Penn Plate Glass Company, a corporation, ought to have and recover of and from the said appellant, the James H. Rice Company, a corporation, its damages by it in this behalf sustained herein, by reason of the premises, and the court, upon the allegations and proofs in the record in this cause, and being fully advised in the premises, doth assess the damages of said appellee, against said appellant, to the sum of nine thousand one hundred and twenty-one dollars and thirty cents ($9121.30)."

WINSTON, PAYNE & STRAWN, (JOHN BARTON PAYNE, of counsel,) for appellant.

SMOOT & EYER, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The only controversy between the parties to this suit is over the amount for which the plaintiff is entitled to recover judgment against the defendant for the breach of the contract entered into by them June 26, 1896, the liability of the defendant being admitted. The question of the amount for which judgment shall be rendered, in a case like this, is a question of fact, and the Appellate Court having fixed the amount of the defendant's liability by its findings of fact and having rendered judgment against the defendant for the amount thus found, its findings of fact upon the question of the amount of defendant's liability are binding upon this court, unless, in arriving at the amount for which it rendered judgment against the defendant, it misapplied the law,— that is, adopted a wrong measure of damages in fixing the amount of the defendant's liability.

It appears from the undisputed evidence that at the time of the breach of the contract there remained undelivered of the glass which the defendant had purchased, 84,655 feet, and the Appellate Court found that the defendant requested the plaintiff to sell, and that the plaintiff sold, the undeliv-

ered glass for the best obtainable prices, and that the plaintiff is entitled to judgment for $9121.30. There has been a great deal of discussion in the briefs filed, as to whether the contract between the parties constitutes a contract of sale or one for the manufacture and sale of said glass. In view of the findings of fact by the Appellate Court we think those questions immaterial. If the plaintiff had the glass on hand ready to be delivered at the time the defendant repudiated the contract, or if the glass was not in existence at the time the defendant broke the contract, we are unable to see that either of those conditions affects in any way the amount the defendant should pay the plaintiff as damages, if the plaintiff, after the breach of the contract, at the request of the defendant, sold the glass it had on hand, or continued to manufacture glass and afterwards sold the glass so manufactured. The plaintiff would have received from the defendant for the undelivered glass, had the defendant accepted and paid for the same, the contract price therefor. The defendant, however, refused to accept the glass and requested the plaintiff to sell the undelivered glass, and the plaintiff did sell the same at the best obtainable prices. If the plaintiff, after the glass was sold, deducted the amount it received from said sales from the amount it would have received from defendant had it accepted and paid for the glass under the terms of the contract, the difference between those amounts would represent the amount which the plaintiff was damaged by reason of the failure of the defendant to accept and pay for the glass according to the contract. The Appellate Court, by its findings of fact, has fixed the difference between the amount which the defendant would have paid the plaintiff had it accepted the glass and paid for it under the contract, and the amount which the plaintiff actually did receive from the sale of the glass to other parties, at $9121.30. The payment of this amount, if the findings of fact by the Appellate Court are correct,—and we are bound in this suit to assume they are,—to the plaintiff, when added to the amount which

it received from the parties to whom it sold the glass, will fully indemnify it from damages by reason of the breach of said contract,—that is, the receipt of said amount will give the plaintiff the same amount it would have received had the defendant performed its contract. The judgment of the Appellate Court works out justice between the parties, and we see no reason why its conclusion is not correct from a legal as well as a moral standpoint. The law is well settled that where the vendee refuses to receive personal property purchased, the vendor may re-sell the same and recover the difference between the contract price and the amount received upon the re-sale, and in case the vendee refuses to receive the property purchased, it is the duty of the vendor to mitigate his damages so far as he reasonably can. (*Wrigley* v. *Cornelius,* 162 Ill. 92; *Brant* v. *Gallup,* 111 id. 487.) The parties both seem to have recognized and to have acted upon these rules, and there is no recognized principle upon which the seller, either in law or equity, can be placed in a better position than he would have occupied if the purchaser had performed the contract. *Tiernan* v. *Granger,* 65 Ill. 351.

It appears from an examination of the opinions of the Appellate Court filed in this case that the opinion filed on the second appeal departed from the rule announced in the opinion filed by that court when the case was before it the first time, as to the measure of damages which should be applied in determining the amount of the liability of the defendant for a breach of said contract, and it is contended the first opinion settled the rule as to the measure of damages to be applied in this case,—that is, that question became *res judicata* after the rendition of the first opinion by the Appellate Court. The law is clear that when a case is reversed by an appellate tribunal and remanded for a new trial, the principles announced by the appellate tribunal in its opinion, on a re-trial of the case in the court to which the case is remanded and upon an appeal from a judgment rendered upon such remandment, must control if the case presented upon the sec-

ond trial and appeal is the same case as the case in which
the opinion was filed reversing and remanding the case.  If,
however, the case is remanded for a new trial and a different
case is made upon the second trial from that made upon the
first trial, by the introduction of further and material testi-
mony, the case becomes upon the second trial, and in case of
an appeal upon the second appeal, a new case, and the trial
and appellate tribunals are required to consider the entire
case as made upon the second trial, and apply such princi-
ples of law to its decision as are applicable to the new case.
(*Spring Valley Coal Co.* v. *Patting,* 210 Ill. 342; *West* v.
*Douglas,* 145 id. 164.)   The opinion filed upon the first ap-
peal shows the judgment was reversed and the cause re-
manded for a new trial.  It also appears from the last opinion,
and from the testimony of certain witnesses found in the
record filed on this appeal, that the evidence upon which the
Appellate Court made its finding of fact that the defendant
requested the plaintiff to sell, and plaintiff sold, the undeliv-
ered glass for the best obtainable prices, and upon which said
court held, on the last appeal, that the measure of damages
was the difference between the contract price and the price at
which the glass was re-sold, was not in the record when the
case was before the Appellate Court the first time.   While it
is true that error cannot be assigned upon the opinion of the
Appellate Court, (*Traeger* v. *Mutual Building and Loan
Ass.* 189 Ill. 314,) in *Illinois Central Railroad Co.* v. *Smith,*
208 Ill. 608, it was held that this court may rightfully look
into the opinions of the Appellate Court for the purpose of
advising itself as to the questions considered by that court
and how they were disposed of, and we think when the Ap-
pellate Court has refused to follow its former opinion filed
upon the first appeal, as appears to be the case here, this court
may look into the opinions of that court, in connection with
the record then before it, for the purpose of satisfying itself
whether the case presented to the Appellate Court upon the
second appeal is the same case as that which was presented

to it on the first appeal. From an examination of the opinions of the Appellate Court and the record on file in this case on this appeal we are convinced that the case made on the last trial so far differed from the case presented to the Appellate Court upon the first appeal that the court was not bound, as a matter of law, to follow the rule as to the measure of damages announced in its first decision, but might apply the law, as it then viewed it, to the new state of facts as they appeared in the last record.

It is next contended that the Appellate Court erred in neglecting to allow the plaintiff interest upon the amount which it found due the plaintiff from the date of the breach of the contract to the date of judgment in that court. The trial court, upon propositions of law duly submitted, held that the plaintiff was not entitled to interest upon its demand against the defendant. The defendant appealed from the judgment rendered upon that trial to the Appellate Court. The holding of the trial court was, however, upon the question of interest, in its favor. If the plaintiff was not satisfied with the holding of the trial court upon that question it should have assigned cross-errors in the Appellate Court challenging the correctness of the holding of the trial court in declining to allow it interest, and having failed so to do, it is bound by such holding and cannot raise the question for the first time in this court. *Newell* v. *Sass,* 142 Ill. 104; *Thompson Co.* v. *Whitehed,* 185 id. 454; *Columbia Theatre Amusement Co.* v. *Adsit,* 211 id. 122; *Kantzler* v. *Bensinger,* 214 id. 589.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*