678    APPELLATE COURTS OF ILLINOIS.

VOL. 84.]  Western Union Cold Storage Co. v. Winona Produce Co.

## Western Union Cold Storage Co. v. Winona Produce Co.

1. FACTORS—*Duty in Selling Property.*—It is the duty of a factor to exercise reasonable care and prudence in selling to responsible parties, and if he neglects this duty he will be liable for losses which result.

2. SAME—*Duty in Ascertaining Financial Ability of Purchaser.*—An agent or factor will be held to all reasonable diligence in learning the pecuniary ability of purchasers, and any inattention or carelessness in this respect will render him liable for losses thereby sustained, and while he will not be held as a guarantor of his sales, he will be held to a high degree of vigilance in learning the ability of the purchaser to pay.

3. GUARANTOR—*Factor Not to be Held as, When.*—An agent or factor is not ordinarily, in the absence of an express agreement, a guarantor of payment, and if he exercises due diligence to ascertain the financial ability of purchasers, and a loss occurs, the principal must bear it, and not the factor.

4. DAMAGES—*Sales by Agents to Irresponsible Buyers.*—The price at which an irresponsible buyer agrees to purchase is not necessarily the standard by which to measure an agent's liability. The principal is entitled to recover the damages he suffers by reason of his agent's failure to use reasonable diligence to ascertain the financial ability of his purchaser, but not such damages, if any, as may have been occasioned by his own neglect in failing to take steps to protect himself upon learning of the purchaser's irresponsibility.

**Assumpsit.**—Common counts. Trial in the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Finding and judgment for plaintiff; appeal by defendant. Heard in the Branch Appellate Court at the October term, 1898. Reversed and remanded. Opinion filed July 11, 1899. Rehearing denied October 27, 1899.

DEFREES, BRACE & RITTER, attorneys for appellant.

Appellant is not chargeable with the proceeds of the supposed sale of January 7th on the principle of estoppel because its advice of such sale sent to appellee, although

erroneous, did not prejudice appellee or cause it to do any act which it otherwise would not have done, or omit to do any act which it otherwise would have done. Bigelow on Estoppel (5th Ed.), Chap. 18, Sec. 6; Davidson v. Young, 38 Ill. 146; Hefner v. Vandolah, 57 Ill. 520; Ball v. Hooten, 85 Ill. 159; Powell v. Rogers, 105 Ill. 318; Town of Golconda v. Field, 108 Ill. 419; Union Mutual Life Insurance Company v. Slee, 123 Ill. 57.

Appellee's duty required the exercise of reasonable diligence and care only. Story on Agency, Sec. 186; Phillips v. Moir, 69 Ill. 155; Darlington v. Fredenhagen, 18 Ill. App. 273.

If appellee is entitled to recover any damages by reason of the transaction of January 7th, such damages should be limited to the difference in market price of the eggs on the day of the supposed sale and the day on which it had notice that the sale was not consummated. It was the duty of appellee upon learning that the sale had not been consummated to order a resale or take such other steps as were necessary or proper to protect its interests in the premises and lessen the damages. Sioux City R. R. Co. v. Walker, 49 Iowa, 273; Ford v. Refrigerating Company, 40 Ill. App. 222; Brant v. Gallup, 111 Ill. 487; Sutherland on Damages, 148.

CHURCH, McMURDY & SHERMAN, attorneys for appellee.

One who accepts a consignment is liable for damage, misconduct or neglect of duty in relation thereto, though his services were rendered gratuitously. Walker v. Smith, 4 Dallas (U. S.), 388.

It is the duty of a factor to inform his principal of every fact in relation to the transaction which comes to his knowledge. Mechem on Agency, 1012.

It is the duty of the factor to notify the consignor of the terms of the sale or conditions imperiling the contract. Howe v. Sutherland, 39 Ia. 484; Mechem on Agency, 1012.

If a factor sells and credits the principal with the amount of sales and fails to notify his principal within a reasonable

680    APPELLATE COURTS OF ILLINOIS.

VOL. 84.] Western Union Cold Storage Co. v. Winona Produce Co.

time that the debt is bad, he becomes an insurer of the whole debt.   Harvey v. Turner, 4 Rawle (Penn.), 223.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This is an appeal from a judgment by which appellant is charged with the full amount of the proceeds of a sale, which was never consummated, of certain goods in its hands upon which it had made advances to appellee.

Appellant was conducting a cold storage warehouse in Chicago, to which appellee had, it is said, been accustomed to ship, and in which it had stored eggs in considerable quantities.   In May and June, 1895, three carloads of eggs were shipped to and received by appellant, upon which it made advances to appellee and received from the latter three notes for such advances.   In November following appellant discounted the three notes and hypothecated as security to the banks the warehouse receipts, which it had received from appellee with the notes given for the money when it was originally advanced.   During November and December appellee became desirous of disposing of the eggs, and offered to sell them or allow appellant to do so at a price named.

On the 7th of January appellant telegraphed appellee that it had an offer for the eggs at fourteen and three-fourths, and appellee immediately directed, by wire, the acceptance of the offer.   Appellant the same day wrote as follows:

" Your message of even date received, and, as instructed therein, we have, to-day, sold your three remaining cars of eggs at 14½ cents, case count, in the house, buyer to assume storage charges after January 8th."

The same day appellee wrote that it confirmed its acceptance of the price.

On the 13th of January appellant wrote as follows:

" While we sold the three cars of eggs for you and billed them to the party buying the same, who has agreed to pay storage charges from January 8th, the stock has not yet been moved out of the house, but as soon as it is we will make

up your statement in full and send you check for the amount due, which we trust will be satisfactory to you."

The letter further states that if appellee is dissatisfied with the sale, appellant thinks the purchaser is willing to throw up the deal; otherwise appellant will try to get the buyer to remove the eggs as soon as possible, and as soon as paid for, " will give you credit for same and make up your account." To this appellee replied that the sale, as reported, was a cash transaction, and that it looks to appellant for its consummation, and does not desire to own the eggs again. On the 18th of January, appellant again writes that the eggs had not been moved, nor paid for; and January 27th states that it has been trying to get the buyer to move and pay for the eggs or " put up margin;" that it is anxious to get the eggs out of the house, and would like any suggestion, and that appellant is acting only as · agent for appellee in the transaction.

To this appellee replied, January 28th, stating that it regards the transaction as a sale for cash by appellant, and sees no reason why the latter should not account for the proceeds. Some further correspondence followed, and February 7th, in a letter of that date, appellant for the first time informed appellee who the buyer was to whom appellant had made the sale January 7th. Appellee then learned for the first time that this purchaser was a rival company of its own town, Winona, Minnesota, the credit of which, it appears from the testimony, was not regarded as good, even by appellant, at the time.

The sale never was consummated. Meanwhile the market price of eggs had been steadily falling, and eventually the stock was sold out by the banks who held the notes, for a sum less than their face value.

The trial court held appellant responsible upon the same basis and to the same extent as if the sale of January 7th had actually been consummated, and appellant had received the purchase price in full.

That appellant was negligent, to say the least, in this transaction, can not, we think, be doubted. While advising

682    APPELLATE COURTS OF ILLINOIS.

VOL. 84.] Western Union Cold Storage Co. v. Winona Produce Co.

the appellee, after some delay, that the eggs had not been taken and paid for, it did not state what was within its own knowledge—that the buyer was a concern in bad credit, whose only reasonable expectation of being able to take and pay for the eggs was dependent upon finding a purchaser to take them off its hands. It withheld this information for a month, while the market price was steadily falling, and the chance of selling at anywhere near the price agreed to be paid by the problematic purchaser was rapidly diminishing. The want of financial responsibility in the supposed buyer was a fact of which it was clearly the duty of appellant, as agent of appellee in making the sale, to advise its principal. If appellee had been fairly and fully advised of the situation, it might have protected itself. It has a right, we think, to look to appellant for the payment of such loss and damage as it suffered by reason of negligence or misconduct of the latter. It was the duty of the agent to notify the consignor of any terms or conditions which might imperil the fulfillment of the contract of sale. Howe v. Sutherland, 39 Iowa, 484; Mechem on Agency, 1012.

Had the vendee been responsible, appellee might have recovered the full contract price, or sold the eggs itself and recovered the excess of the contract price over the market price realized. Bagley v. Findlay, 82 Ill. 524.

It could thus have recovered of its vendee its loss. Appellee was, however, precluded from protecting itself by appellant's suppression of the material fact that the supposed purchaser was not responsible—a fact which, if known, as it would have been had the purchaser's identity been revealed, would probably have prevented the acceptance of the supposed sale.

" It is the duty of the factor to exercise reasonable care and prudence in selling only to responsible parties, and if he neglects to do so he will be liable for a loss that may ensue." Mechem on Agency, Sec. 1013.

An agent will be held at least to all reasonable diligence in learning the pecuniary ability of the purchaser; and as

is said in Foster v. Waller, 75 Ill. 464, 467, "inattention or carelessness must be held to render him liable for loss thereby sustained. While he will not be held as a guarantor of such sales, he will be held to a high degree of vigilance in learning the ability of the purchaser." It appears that appellant did know that the purchaser, whose representative had desk room in appellant's office, was probably irresponsible. At all events it failed to report the facts to appellee, as it should have done, and must respond in such damages as its misconduct occasioned.

But the agent or factor is not ordinarily and in the absence of an express agreement, "a guarantor of payment, and if, having exercised due diligence, a loss occurs, the principal must bear it, and not the factor." Mechem on Agency, 1013.

Not being liable as a guarantor, and not having received the purchase money, the appellant can not properly be held, as was done by the trial court, for the amount which would have been realized had the sale been consummated and the price paid as agreed upon.

The parties waived a jury and entered into a stipulation, one clause of which is as follows:

"In case it shall be held that the defendant is not accountable to plaintiff by reason of said transactions with said Foster Company, as and to the extent stated in paragraph 1 hereof, but is accountable to the plaintiff for damages under the facts shown in this case, then, and in such case, the court shall ascertain and determine the amount of such damage and any further credit or allowance to which the plaintiff may in such case be entitled, and if the amount thereof shall be less than $1,410.83, the defendant shall have judgment against the plaintiff for the difference, with interest from March 21, 1896, at the rate of 7 per cent per annum; but if the same shall exceed the sum of $1,410.83, plaintiff shall have judgment against the defendant for the amount of such excess, with interest from March 21, 1896, as aforesaid."

As the appellant was held accountable to the extent stated in said paragraph 1 of the stipulation, the trial court did not ascertain or determine the damages for which defend-

ant is accountable. This should have been done, and judgment rendered accordingly.

From the time when appellee was notified who the buyer was, learned it was an irresponsible concern and was put in possession of all the facts, if it wished to sell before the market price further declined, it had the right to do so and protect itself. It could not thereafter refuse to have anything to do with caring for its own property, and hold appellant liable because of the latter's previous misconduct, for a loss resulting from appellee's own neglect. The price at which the irresponsible buyer had agreed to purchase is not necessarily the standard by which to measure appellant's liability.

Whatever loss, if any, was caused by failure to take measures to protect itself after appellee was advised of the actual situation, there being a decline in prices, appellant is not responsible for. The eggs were still appellee's property, subject to the lien of the holder of the notes for payment of which the property was pledged. It is entitled to recover the damages it suffered by reason of appellant's misconduct, but not such damages, if any, as may have been occasioned by its own neglect. It is not our province to say what these damages which appellee is undoubtedly entitled to recover may be. That must be determined by another trial.

The judgment of the Circuit Court must be reversed and the cause remanded.